# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | |
|---|---|
| JAIME SANCHEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>v.<br><br>SCHLUMBERGER TECH. CORP. | CASE NO: 2:17-cv-00102<br>COLLECTIVE ACTION (29 U.S.C. § 216(b)) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Jaime Sanchez brings this lawsuit to recover unpaid overtime wages and other damages from Schlumberger Tech. Corp. ("Schlumberger") under the Fair Labor Standards Act ("FLSA").

2. Sanchez and the other workers like him regularly worked for Schlumberger in excess of 40 hours each week. But these workers never received overtime for hours worked in excess of 40 hours in a single workweek. Instead of paying overtime as required by the FLSA, Schlumberger improperly classified Sanchez and those similarly situated as independent contractors and paid them a daily rate with no overtime compensation. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

5. Schlumberger maintains offices in Alice, Texas, located within this District and Division.

6. Sanchez and other Class Members worked in Alice, Texas and performed work

related tasks for Schlumberger in this District and Division.

**THE PARTIES**

7. Sanchez worked for Schlumberger as a cement field coordinator from approximately June 2013 to January 2015. Throughout his employment with Schlumberger, he was paid a day-rate with no overtime compensation and was classified as an independent contractor. Sanchez's consent to be a party plaintiff is attached as Exhibit A.

8. Sanchez brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by Schlumberger's day-rate system. Schlumberger paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA. The class of similarly situated employees or potential class members sought to be certified is defined as follows:

> **Current and former oilfield workers employed by, or working on behalf of, Schlumberger during the past three years who were classified as independent contractors and paid a day-rate.**

9. Schlumberger may be served by serving its registered agent: **Capitol Corporate Services, Inc., 206 E 9th St., Suite 1300, Austin, TX 15212.**

**COVERAGE UNDER THE FLSA**

10. For at least the past three years, Schlumberger has been an employer within the meaning of the section 3(d) of the FLSA, 29 U.S.C. § 203(d).

11. For at least the past three years, Schlumberger has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

12. For at least the past three years, Schlumberger has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged

in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

13. For at least the past three years, Sanchez and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

14. Schlumberger treated Sanchez (and indeed all of its workers that it classified as independent contractors and paid a daily rate to without overtime compensation) as employees and uniformly dictated the pay practices to which Sanchez and its other workers (including its so-called "independent contractors") were subjected.

15. Schlumberger's misclassification of Sanchez and the Putative Class Members as independent contractors does not alter their status as employers for purposes of this FLSA collective action.

## FACTS

16. Schlumberger is a subsidiary of Schlumberger (NYSE: SLB). Schlumberger prides itself on being "the world's leading supplier of technology, integrated project management and information solutions to customers working in the oil and gas industry worldwide," and boasts that it provides "the industry's widest range of products and services from exploration through production."[1] In order to provide services to many of its customers, Schlumberger contracts with certain companies to provide it with employees to perform the necessary work.

---

[1] Schlumberger, About, http://www.slb.com/about.aspx (last visited Mar. 15, 2017).

17. Many of these individuals worked for Schlumberger on a day-rate basis, were misclassified as independent contractors, and make up the proposed Putative Class. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

18. Specifically, Schlumberger classified all of these workers as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

19. For example, Sanchez worked for Schlumberger as a cement field coordinator from approximately June 2013 to January 2015. Throughout his employment with Schlumberger, he was classified as an independent contractor and paid on a day-rate basis.

20. In this capacity, Sanchez's primary job duties included rigging up oil field equipment, operating, maintaining, and cleaning the cementing equipment and tools, and rigging down oilfield equipment. Cement field coordinators work with their hands and physical strength to perform their job, and wear hardhats, eye protection, ear protection, and other PPE to protect themselves from the dangerous work they perform. Sanchez and all cement field coordinators' main job duty is manual labor in the oilfield. Sanchez worked well in excess of 40 hours each week while employed by Schlumberger, often for weeks at time.

21. The work Sanchez performed was an essential part of Schlumberger's core business.

22. During Sanchez's employment with Schlumberger while he was classified as an independent contractor, Schlumberger exercised control over all aspects of his job. Schlumberger did not require any substantial investment by Sanchez in order for him to perform the work required of him. Schlumberger determined Sanchez's opportunity for profit and loss. Sanchez was not required to possess any unique or specialized skillset (other than that maintained by all other workers

in his respective position) to perform his job duties. Sanchez worked extensively for Schlumberger as an independent contractor from approximately June 2013 to January 2015.

23. Indeed, Schlumberger controlled all the significant or meaningful aspects of the job duties performed by Sanchez.

24. Schlumberger ordered the hours and locations Sanchez worked, tools used, and rates of pay received.

25. Even though Sanchez often worked away from Schlumberger's offices without the presence of a direct supervisor employed by Schlumberger, Schlumberger still controlled all aspects of Sanchez's job activities by enforcing mandatory compliance with Schlumberger's and/or its client's policies and procedures.

26. No real investment was required of Sanchez to perform his job. More often than not, Sanchez utilized equipment provided by Schlumberger to perform his job duties. Sanchez did not provide the equipment he worked with on a daily basis. Schlumberger and/or its clients made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Sanchez worked.

27. Sanchez did not incur operating expenses such as rent, payroll, marketing, and insurance.

28. Sanchez was economically dependent on Schlumberger during his employment.

29. Schlumberger set Sanchez's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for Schlumberger.

30. Schlumberger directly determined Sanchez's opportunity for profit and loss. Sanchez's earning opportunity was based on the number of days Schlumberger scheduled him to work.

31. Very little skill, training, or initiative was required of Sanchez to perform his job

duties.

32. The daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Schlumberger and/or its clients. Virtually every job function was pre-determined by Schlumberger and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

33. The job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree. The Putative Class Members did not have any supervisory or management duties. Finally, for the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to servicing oil and gas operations in the field.

34. Sanchez performed routine manual and technical labor duties that were largely dictated by Schlumberger and/or its clients.

35. Sanchez worked for Schlumberger from approximately June 2013 to January 2015 as an independent contractor. Sanchez was not employed by Schlumberger on a project-by-project basis. In fact, while Sanchez was classified as an independent contractor, he was regularly on call for Schlumberger and/or its clients and was expected to drop everything and work whenever needed.

36. All of the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures, which dictate the day-to-day activities performed by each person.

37. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice. The Putative Class Members all worked in excess of 40 hours each week and were often scheduled for 12-hour shifts for weeks at a time. Instead of paying

them overtime, Schlumberger paid the Putative Class Members a day-rate and misclassified them as independent contractors. Schlumberger denied the Putative Class Members overtime for any hours worked in excess of 40 hours in a single workweek.

38. Schlumberger's policy of failing to pay its independent contractors, including Sanchez, overtime violates the FLSA because these workers are, for all purposes, employees performing non-exempt job duties.

39. It is undisputed that the contractors are maintaining and working with oilfield machinery, performing manual labor, and working long hours out in the field.

40. Because Sanchez (and Schlumberger's other independent contractors) was misclassified as an independent contractor by Schlumberger, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

41. Schlumberger's day-rate system violates the FLSA because Sanchez and those similarly situated did not receive any overtime pay for hours worked over 40 hours each week.

**FLSA VIOLATIONS**

42. As set forth herein, Schlumberger has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess of 40 hours per week at rates no less than 1.5 times the regular rates for which they were employed.

43. Schlumberger knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. Schlumberger's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

44. Accordingly, Sanchez and all those who are similarly situated are entitled to overtime

wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

## COLLECTIVE ACTION ALLEGATIONS

45. Sanchez incorporates all previous paragraphs and alleges that the illegal pay practices Schlumberger imposed on Sanchez were likewise imposed on the members of the class.

46. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

47. Numerous other individuals who worked with Sanchez indicated they were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

48. Based on his experiences and tenure with Schlumberger, Sanchez is aware that Schlumberger's illegal practices were imposed on the members of the class.

49. The members of the class were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty 40 per week.

50. Schlumberger's failure to pay wages and overtime compensation at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the members of the class.

51. Sanchez's experiences are therefore typical of the experiences of the members of the class.

52. The specific job titles or precise job locations of the various members of the class do not prevent class or collective treatment.

53. Sanchez has no interest contrary to, or in conflict with, the members of the class. Like each member of the class, Sanchez has an interest in obtaining the unpaid overtime wages owed under federal law.

54. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

55. Absent this action, many members of the class likely will not obtain redress of their injuries and Schlumberger will reap the unjust benefits of violating the FLSA.

56. Furthermore, even if some of the members of the class could afford individual litigation against Schlumberger, it would be unduly burdensome to the judicial system.

57. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

58. The questions of law and fact common to each of the members of the class predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   (a) Whether Schlumberger employed the members of the class within the meaning of the FLSA;

   (b) Whether the members of the class were improperly misclassified as independent contractors;

   (c) Whether Schlumberger's decision to classify the members of the class as independent contractors was made in good faith;

   (d) Whether Schlumberger's decision to not pay time and a half for overtime to the members of the class was made in good faith;

   (e) Whether Schlumberger's violation of the FLSA was willful; and

   (f) Whether Schlumberger's illegal pay practices were applied uniformly across the nation to all members of the class.

59. Sanchez's claims are typical of the claims of the members of the class. Sanchez and the members of the class sustained damages arising out of Schlumberger's illegal and uniform employment policy.

60. Sanchez knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

61. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## JURY DEMAND

62. Sanchez demands a trial by jury.

## RELIEF SOUGHT

63. WHEREFORE, Sanchez prays for judgment against Schlumberger as follows:

   (a) For an order allowing this action to proceed as a collective action and directing notice to the class;

   (b) For an order pursuant to section 16(b) of the FLSA finding Schlumberger liable for unpaid back wages, and an equal amount of liquidated damages, due to Sanchez and the class members;

   (c) For an order awarding Sanchez and the class members the costs of this action;

   (d) For an order awarding Sanchez and the class members their attorneys' fees;

   (e) For an order awarding Sanchez and the class members unpaid benefits and compensation in connection with the FLSA and state law violations;

   (f) For an order awarding Sanchez and the class members pre- and post-judgment interest at the highest rates allowed by law; and

   (g) For an order granting such other and further relief as may be necessary and appropriate.

Respectfully Submitted,

**BRUCKNER BURCH PLLC**

By: ___*/s/ Matthew S. Parmet*___
    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    S.D. Tex. ID No. 21615
    Matthew S. Parmet
    Texas Bar No. 24069719
    S.D. Tex. ID No. 1076547
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone:    (713) 877-8788
Telecopier:    (713) 877-8065
rburch@brucknerburch.com
mparmet@brucknerburch.com