UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JAMIE SANCHEZ, DAVID LOYD, and STEVEN STOGRIN, | Case No. 2:17-CV-00102 |
| v. | Judge Nelva Gonzales Ramos |
| SCHLUMBERGER TECH. CORP. | |

**UNOPPOSED MOTION FOR APPROVAL OF
CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE AND
STIPULATION OF DISMISSAL OF LAWSUIT WITH PREJUDICE**

Plaintiffs Jaime Sanchez, David Loyd, and Steven Stogrin ("Plaintiffs") file this Unopposed Motion for Approval of Confidential Settlement Agreement and Release and Stipulation of Dismissal of Lawsuit with Prejudice ("Motion and Stipulation") and in support would show as follows:

I.   **INTRODUCTION AND BACKGROUND**

   A.   **THE ALLEGATIONS**

This collective action lawsuit against Defendant Schlumberger Tech. Corp. ("STC") was filed on March 16, 2017. The lawsuit was later amended to add David Loyd and Steven Stogrin as named plaintiffs. The collective action was ultimately decertified and the opt-in plaintiffs dismissed without prejudice. In the aggregate, this lawsuit alleges that STC misclassified Plaintiffs as independent contractors and paid Plaintiffs a day-rate with no overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, 29 C.F.R. § 778.112 (the "Lawsuit"). Plaintiffs claimed that they performed various duties relating to the overall drilling of STC's and its clients' wells and did so in an economically dependent manner that leaned heavily in favor of employee status. *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008). Plaintiffs further argued that the compensation they received—pay on a day rate basis—failed to satisfy the salary basis test which precluded the application of any exemptions from the overtime requirements. *See Hughes v. Gulf*

*Interstate Field Servs., Inc.*, 878 F.3d 183, 191 (6th Cir. 2017) (whether a worker receives a "guaranteed" salary "does matter" and is a prerequisite to a white collar exemption defense); *Keen v. DXP Enterprises, Inc.,* No. 5:15-CV-137-OLG, 2016 WL 3253895, at *5 (W.D. Tex. June 6, 2016) (holding that a day rate does not meet the salary basis test).[1] Plaintiffs also alleged that STC did not act in good faith in classifying Plaintiffs as contractors and that the pay practice at issue constituted a willful violation of the FLSA.

STC denied the allegations in the Lawsuit and asserted affirmative and other defenses, including that Plaintiffs and those similarly situated were not employees of STC (and instead were independent contractors) and that even if they were employees, they were properly classified as exempt. STC further argued that it acted in good faith with respect to its practices and denied that any violation of the FLSA was willful or that any class of similarly situated employees existed. STC also disputed the damages at issue by questioning the hours worked, the total compensation received and work weeks at issue.

Before reaching a compromise, the Parties expended considerable time debating the relevant legal issues, identifying the class members, compiling/reviewing damage data and working through issues relevant to the nature and scope of the release. The Parties conducted an in-depth analysis of the potential damages, interviewed witnesses, and investigated the business practices at issue. The Parties also participated in mediation with Tony Pletcher and engaged in substantial post-mediation negotiations to reach the compromise before this Court.

### B.    SETTLEMENT

Subject to Court approval (of both the settlement and the confidentiality provisions), the Parties reached an agreement in principle to resolve the unpaid overtime claims of the Plaintiffs

---

[1]    Plaintiffs also alleged that STC could not meet the reasonable relationship test set for in 29 C.F.R. §541.604.

remaining in the case following the Court's rulings on decertification. The scope of the settlement includes meaningful compensation for the three remaining Plaintiffs, the terms of which are memorialized in the settlement agreement ("Agreement") which is attached in its entirety and has been filed under seal as Exhibit 1. If the settlement is approved by the Court, the allegations in the lawsuit will be resolved in their entirety. [2]

As discussed below, the Court should approve the Agreement because it represents a fair compromise of bona fide disputes concerning, among other things, whether STC misclassified the Plaintiffs as independent contractors. Indeed, over the life of this Lawsuit, the Parties—informally, formally, and through extensive subpoenas to third parties—exchanged extensive information and documents relating to STC's classification and compensation of the workers, investigated the supporting facts, and thoroughly studied and briefed the legal principles applicable to the claims and defenses asserted. Based upon the Parties' investigation, legal evaluation, and assessment of the numerous contested legal and factual issues involved in this Lawsuit, including Counsel's understanding of the uncertainties of litigation and the relative benefits conferred upon the Plaintiffs pursuant to the Agreement, Counsel has concluded that this settlement is fair, reasonable, adequate, and in the best interests of the Plaintiffs. Accordingly, Plaintiffs asks the Court to approve the Agreement, and to enter an order dismissing this Lawsuit with prejudice.

Because the terms of the Agreement are reasonable and fair to all parties involved, the Parties ask the Court to approve the Agreement, order the Parties to effectuate and comply with the terms of

---

[2] The Parties submit that, without confidentiality of the amounts in and the scope of the Agreement, there is an increased likelihood that STC would be exposed to further litigation (on claims that it denies), thus depriving STC of a benefit which was the basis for the settlement bargain. Plaintiffs also have an interest in not having their financial information posted in a public record. In addition, the publication of the Settlement Agreement is potentially harmful to STC's ongoing operations and its competitiveness in the marketplace. There is also a public interest in confidentiality in that it encourages and facilitates settlement negotiations and the voluntary resolution of disputes, thereby preserving the resources of the Court. Because all relevant information will be provided to any interested party, no potential claimant is disadvantaged by such confidentiality. As there is no prejudice arising from in camera review but great prejudice should such review be denied, it should be permitted. If the Court is disinclined to permit confidentiality, the Parties request that the Court redact the dollar amounts from the Agreement.

the Agreement, and enter an order dismissing this Lawsuit with prejudice.

## II. SETTLEMENT TERMS

### A. GENERAL TERMS

As set forth in detail in the attached Agreement, the Parties reached a settlement of behalf of the Plaintiffs have signed individual releases under the terms of the Agreement. The terms of the settlement, the scope of the release, the settlement amounts, and the steps following approval are contained within the Agreement and Releases.

Each Plaintiff's Settlement Payment is calculated based upon STC's records of the individual's compensation and weeks of service in the relevant position during the relevant time and are contained in the individual releases to the Agreement. The Plaintiffs will receive a pro-rata Settlement Payment based upon the alleged compensation owed and time worked during the relevant three-year time period. Settlement payments will be distributed by Counsel approximately seventy (70) days after all of the following have occurred, (1) approval of the Agreement by the Court, (2) dismissal of this Lawsuit with prejudice, (3) the submission of properly competed individual releases, W-4s and W-9 forms to STC.

In exchange for the Settlement Payment, the Plaintiffs have released the Released Parties from all claims asserted or that could have been asserted in this Lawsuit.

## III. APPROVAL OF THE SETTLEMENT IS WARRANTED

The Parties now seek Court approval of the Agreement. FLSA claims may be compromised after the court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Villeda v. Landry's Rests., Inc.,* No. H–08–2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009) (citing *Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor,* 679 F.2d 1350, 1353 (11th Cir. 1982)). "If the settlement reflects 'a reasonable compromise over issues,' the court may approve it." *Villeda,* 2009 WL 3233405, at *1 (quoting *Lynn's,* 679 F.2d at 1354). When a court scrutinizes an FLSA

settlement agreement, it must determine that the compromise is a fair and reasonable resolution of a bona fide dispute over the FLSA's provisions. *See Lynn's Food Stores*, 679 F.2d at 1355.

The Agreement represents a fair compromise of several bona fide disputes concerning the legality of STC's compensation and classification practices with respect to the Plaintiffs.

### A.    ECONOMIC REALITIES

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). The FLSA is a broad remedial statute and it promotes a "great public policy" for the benefit of all workers within its reach. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). To achieve its aims, the FLSA uses an "expansive definition" of "employee," which is designed to maximize the reach of the statute. *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311 (5th Cir. 1976); *see also Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 665 (5th Cir. 1983) ("The term 'employee' is thus used in the broadest sense ever included in any act.") (internal quotation marks and alterations omitted). The question is "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Hopkins*, 545 F.3d at 343; *see also Donovan v. Tehco, Inc.*, 642 F.2d 141, 143 (5th Cir. 1981).

Here the Parties disputed whether the economic realities factors present in this case would show as a matter of law that the Plaintiffs were employees. On one hand, Plaintiffs claimed that they were agents of STC, who worked almost exclusively on STC projects, while following STC's practices, procedures, schedules, well plans and directions. On the other hand, STC claimed that the Plaintiffs were highly-skilled workers, who worked independently, and held themselves out as independent contractors both to STC and different federal agencies. Some were short-term contractors with their own business, others had their own businesses but worked exclusively or for long periods of time at

STC. The list of disagreements concerning the economic realities of the workplace is meaningful and reflects the existence of a bona fide dispute (or several) concerning the employee status of the workers.

While both Parties were steadfast in their respective positions, the inherent risks of liability or no liability motivated the Parties to resolve their differences. The product of this careful analysis and sometimes exhaustive deliberations is the reasonable Agreement before this Court.

### B.   TWO-YEAR VERSUS THREE YEAR DAMAGES

To begin, while the FLSA usually has a statute of limitation of two years, willful violations of the FLSA extend that period, resulting in "an additional year's overtime pay." *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 355 (5th Cir. 1990) (discussing 29 U.S.C. § 255). Plaintiffs have the burden to prove a willful violation. *Id.* at 356. "Willful" is defined as whether "the employer knew or showed *reckless disregard* for the matter of whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

As with many FLSA independent contractor cases, the issue of damages—two-year v. three-year—was hotly contested in this lawsuit. STC claimed that is compensation practices were reasonable, based on established industry practices and not in willful violation of the FLSA. Unlike certain competitors of STC, this is not a company with a lengthy history of FLSA violations, prior Department of Labor investigations or other evidence that suggested reckless conduct. While Plaintiffs are confident that additional discovery would have vigorously tested all STC's defenses, the threat of a summary judgment on willfulness could not be ignored for purposes of reaching a settlement in this case.

Had STC succeeded on this defense, the claims of the Plaintiffs would have been wiped out or severely reduced. Equally as consequential, a finding of no willfulness would have reduced the potential damages at issue by over 50%. Thus, the existence of a bona fide dispute on the third-year damages in this case was meaningful and relevant to the Parties' settlement discussions.

### C. OTHER BONA FIDE DISPUTES

The Parties also had other disagreements about the facts and the law which impacted settlement discussions and highlight the bona fide nature of the dispute. As an example, the hours worked by the Plaintiffs was a subject of disagreement. Neither STC nor the Plaintiffs maintained accurate records of hours worked each week. Similarly, while the Parties had records of weeks worked, the records did not always reveal when the work week started. Thus, the issue of whether the Plaintiffs worked 84 hours or more was vigorously contested. As with the other examples, it is clear that bona fide disputes exist in this case.

### D. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

In determining whether the settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, 2010 WL 1688793, at *1 (M.D. La. 2010) (citing *Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 (E.D. La. 2004)).

The Fifth Circuit has set out six factors for evaluating settlement proposals: (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles [to] prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including counsel. *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982).

#### 1. There was no fraud or collusion in the settlement.

This settlement is a product of the contested litigation and extended, arms-length negotiations, including a full-day mediation. A court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary, in determining whether a collective action

settlement is fair and reasonable under the FLSA. *Camp*, 2004 WL 2149079 at *7 (citing 4 Newberg on Class Actions § 11.51 (4th ed.)).

### 2. Independent contractor cases are complex.

This Court is well-aware of the complexity of independent contractor cases. As discussed extensively above, this case was no different and without a settlement, continued litigation, looming trial, and post-verdict appellate concerns would have been long, complex and expensive, and a burden to the Court docket.

### 3. The factual and legal obstacles.

For the reasons, mentioned above, this element is also easily satisfied in this case.

### 4. The possible range of recovery.

"In any case there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830 (E.D. La. 2007) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "In assessing the potential range of recovery, the Court takes into account the risks involved in the litigation and the potential costs involved, and ultimately considers whether the settlement amount is fair and reasonable and falls within a reasonable range of recovery." *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 345 (N.D. Tex. 2011). This does not require the Court to consider "an express estimate of the range of possible monetary recovery should plaintiffs prevail at trial." *Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir. 1983); *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 460 (W.D. Tex. 1999). This is particularly true where, as here, "estimating the range of possible recovery … is difficult." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1067 (S.D. Tex. 2012).

In this case, the settlement provides the Plaintiffs with approximately 120% of their statutory two-year overtime wages and 61% of their three-year unpaid overtime wages. The settlement easily falls within the range of reasonableness—especially with the realities of the litigation at issue.

### 5. The opinions of counsel and the class.

The Agreement was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and in this case, were particularly well informed as to the facts and circumstances of the Lawsuit. *Austin v. Pennsylvania Dep't of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

The Parties' respective Counsel agree the Settlement Agreement is a fair and reasonable compromise of the claims alleged by Plaintiffs in light of the procedural posture of the case, the litigation risks, and the litigation costs to all Parties.

Likewise, the Plaintiffs believe the settlement is fair, reasonable and in their best interests. Further all Parties agree that the settlement provides the Plaintiffs with substantial benefits without have to wait years for drawn out litigation.

### IV. APPROVAL OF ATTORNEYS' FEES, COSTS AND SERVICE AWARD IS WARRANTED

Plaintiffs' attorneys seek 40% of the Gross Settlement Amount, Costs, and Service Awards for each named Plaintiff.

**A.     ATTORNEYS' FEES**

In accordance with the governing contingency fee agreement, the Parties agreed set Plaintiffs' Counsel fees at 40% of the gross settlement amount. This is the agreement the Parties have presented to the Court for approval. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed." Within the Fifth Circuit, customary contingency fees for class funds have ranged from 33.33% to 50%. *See In re Bayou Sorrell Class Action*, 2006 WL 323 (awarding, in a percentage/*Johnson* analysis, attorney fees of 36%). In FLSA cases such as this,[3] the "customary contingency" in the Fifth Circuit is within the range of 35 to 40%.[4] *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001).

The Fifth Circuit recognizes that contingency fees are desirable—particularly in common fund cases like this one—because it is predictable, encourages settlement, and reduces incentives for protracted litigation. *Union Asset Mgmt. v. Dell, Inc.*, 669 F.3d 632, 643-44 (5th Cir. 2012) ("district courts in this Circuit regularly use the percentage method blended with a *Johnson* reasonableness check, and for some it is the 'preferred method.'").

In this case, the attorneys' fees sought are warranted under the circumstances. Not only does the settlement represent a significant benefit to the Plaintiffs in the face of the many legal and factual risks posed by litigation, but it also guarantees payment without years of protracted litigation. Further Counsel assumed a very real risk in taking on this case. Counsel took the case on a contingency basis,

---

[3]     Other types of actions may involve concerns not present in an FLSA matter such as this. For example, Rule 23 class actions have unique procedural rules not applicable to an FLSA case, and notably bind nonparticipating class members, while and FLSA action requires an affirmative decision by putative class members to opt-in. Likewise, this case does not invoke the unique concerns involved in a maritime injury, where the court must be mindful of its role in protecting a ward of admiralty.

[4]     The Fifth Circuit notes this was the customary fee for cases "against the government," but Counsel does not believe this distinction to be material.

and was prepared to invest time, effort, and money over a period of years with no absolutely no guarantee of any recovery. Based on the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, coupled with the recognition that 40% is in line with other settlements approved by courts in this Circuit, the Court should approve an award of 40% in this case.

### B.  THE COSTS ARE REASONABLE

In addition to being entitled to reasonable attorneys' fees, the relevant wage and hour law provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b) ("worker may recover in a civil action the full amount of such minimum wage less any amount actually paid to the worker by the employer, together with costs and such reasonable attorney's fees as may be allowed by the court…").

Here, the Parties have agreed to an amount designated for costs in the settlement agreement. Counsel's costs include reasonable out-of-pocket expenditures such as filing fees, records, copies, postage, travel, three mediations, meetings, and PACER/Westlaw. All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Agreement.

### V.  CONCLUSION

The Parties believe that the terms and conditions of the Agreement are fair, reasonable, adequate, and in the best interests of all Parties. As noted above, this proposed Agreement was reached following the exchange of information and data and after extensive negotiations. Because of the various defenses asserted by STC and the possibility that STC may have successfully defeated or limited some or all of the Plaintiffs' claims, including those claims related to willfulness, liquidated damages, and compensation for unpaid overtime, the Parties believe that the settlement represents a fair compromise of a bona fide dispute. Moreover, given the strong likelihood that absent a settlement, this case would have proceeded to trial, a compromise of the claims prevents all Parties from incurring

the additional costs and delay associated with trial and possible appeal.

The Parties hereby requests that the Court: (1) approve this settlement, including all of the terms set forth in the Agreement; (2) allow the Agreement and all related documents to be filed under seal; (3) direct the Parties to implement and complete the funding as set forth in the Agreement; and (4) dismiss this lawsuit and the claims of Plaintiffs with prejudice.

Respectfully Submitted,

By: */s/William R. Liles*
**Michael A. Josephson**
State Bar No. 24014780
**William R. Liles**
State Bar No. 24083395
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
wliles@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Fed. Id. 21615
State Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFFS**

### CERTIFICATE OF SERVICE

On November 16, 2020, I served a copy of this document on all registered parties and/or their counsel of record, via the Court's CM/ECF system.

*/s/William R. Liles*
William R. Liles